FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 05, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JUSTIN HARTER,<br><br>            Plaintiff,<br><br>      v.<br><br>MEGAN J. BRENNAN, Postmaster General,<br><br>            Defendant. | No. 2:16-CV-00438-SMJ<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

In this case Plaintiff Justin Harter, a Native Alaskan man, alleges that Defendant's (the Postal Service) decision to terminate his temporary employment after Christmas 2014 and failure to rehire him for the holiday season in 2015 constituted gender and race discrimination in violation of Title VII of the Civil Rights Act. The Postal Service moves for summary judgment, arguing that Harter fails to establish a prima facie case of gender or race discrimination and, in the alternative, that Harter fails to show that the Postal Service's articulated non-discriminatory reasons for terminating and not rehiring him were pretext for discrimination. Because Harter has not demonstrated that similarly situated female or non-Native American employees

ORDER - 1

were treated more favorably or that other circumstances give rise to an inference of discrimination, he has not established a prima facie case of gender or race discrimination. Moreover, Harter has not demonstrated that the Postal Service's articulated reason for terminating him in 2014 (staffing reduction at the end of the holiday season) or decision not to hire him for a position in 2015 (a mediocre performance review from his 2014 supervisor) were pretext for gender or race discrimination.

## BACKGROUND

### A. Factual background

Plaintiff Justin Harter is male and Native Alaskan. He graduated from Haskell Indian Nations University in May 2014, and he worked for the Gila River Indian Community in summer 2014. In November 2014, Harter was hired to work as a Postal Support Employee (PSE) over the holiday season at a processing and distribution center in Spokane. 43 PSEs were hired for the 2014 holiday season at the Spokane processing and distribution center.

Harter worked from November 28, 2014, to December 26, 2014. Harter alleges that he was not absent or late, he had no write ups for discipline, and his work was satisfactory during that time. Another Postal Service employee, Anne Lohman, states that she saw Harter working every day during the 2014 holiday season and that he appeared to be a solid employee.

Dorian Chastain supervised PSE employees at the Spokane distribution center, including Harter. Lohman, who has worked with Chastain for approximately 10 years asserts that she has observed Chastain favor younger female workers and that she has observed Chastain behave very negatively towards a male Native American employee. Another Postal Service Employee, Phillip Walker, who has worked with Chastain for many years, asserts that Chastain frequently gets angry with employees he supervises, but that he is much more patient with female employees. Another Postal Service employee, James Thornton, who is Native American and was previously supervised by Chastain, similarly asserts that Chastain favored female employees. Thornton also asserts that, while Chastain never directly commented on his Native heritage, Chastain did comment on his long hair, saying that he did not like men with long hair.

At the conclusion of Harter's employment, Chastain filled out an evaluation form, in which he indicated that Harter was "late often," his "attitude was poor," and he "did not follow instructions," and recommended that Harter not be rehired. Harter did not receive a copy of this evaluation.[1] Chastain asserts

---

[1] Harter states that when he left employment on December 26, 2014, nothing derogatory or negative was communicated to him about his performance. Harter initially obtained a "Form 50" regarding his 2014 termination from his official personnel file. That form does not reflect any basis for termination, indicates that Harter's work was satisfactory, and does not include a do-not-rehire

that neither race nor gender affected his rating of Harter's performance and that he was not aware of Mr. Harter's race. Chastain also asserts that Harter was not terminated for cause. Chastain was told by two on-the-job instructors that Harter's performance was average.

Termination of Harter's employment on December 26 was consistent with the Postal Service's practice of reducing PSE staffing based on workload after Christmas. Most of the PSEs at the Spokane facility were let go around this time, including nine on the same day and all by January 9, 2015. Two of these individuals were rehired in January. 17 other employees who worked as PSEs in 2014 have since been hired for other positions by the Postal Service.

The Postal Service advertised for a 2015 holiday PSE Mail Processing Clerk position on September 27, 2015. Harter applied for this position (position #1) on September 28, 2015. His application did not list his race or ethnicity, but did indicate that he attended Haskell Indian Nations University. Harter completed an online assessment and received a passing score. He states that he never received a call or email to schedule an interview. Harter made several

---

recommendation. Harter obtained another Form 50 during the EEO investigation. This form stated that he was terminate for failed probation. Neither of these forms included the comments made in Harter's evaluation that was filled out by Chastian. The apparent reason for this is that the Postal Service does not include comments on a Form 50 in an employee's personnel file, but the comments are accessible by hiring officials from a separate database containing the employee's personnel action history.

ORDER - 4

calls to Human Resources Specialist Grace Coldsnow, starting on October 19, 2015, to check on the status of his application. He did not reach Ms. Coldsnow until November 3, when she notified him that he was not selected for position #1 because he failed to respond to a request for an interview. The Postal Service has no record of any official contacting Harter by phone or email to schedule an interview. It is unclear whether he was actually contacted, and if not, why he was not selected for failing to respond. The Postal Service hired three males and four females for position #1.

On November 4, 2015, the Postal Service advertised for another holiday term PSE mail processing clerk position (position #2). Harter applied for position #2 on November 5. His application did not list his race or ethnicity, but did indicate that he attended Haskell Indian Nations University.

Harter was interviewed for position #2 by Lawrence Walkden on November 19, 2015. Walkden had no involvement in the hiring for position #1. During the interview, Harter told Walkden that he previously worked for the Postal Service.

Following the interview, Walkden reviewed Harter's prior job evaluation and talked to Chastain about Harter's prior performance. Based on Chastain's evaluation, Walkden recommended that Harter not be selected for position #2. Walkden believed Harter was Caucasian, and stated that race and gender were

not hiring considerations. Harter was notified on November 23, 2015, that he was not selected for position #2. The Postal Service filled Position #2 with 6 males and 3 females.

Harter's father, who is a Postal Service employee, went to see Walkden on November 25, 2015, to find out why Harter was not selected. Walkden disclosed that the reason was a "bad review" regarding Harter's 2014 employment. Harter asserts that this was the first time he learned of any negative information concerning his 2014 employment.

**B.     Procedural History**

Harter first contacted the Equal Employment Opportunity (EEO) office for the Postal Service on December 29, 2015. In that initial contact he complained that he was not hired for a PSE position because he was Native American. On April 11, 2016, Harter made a formal complaint with the EEO alleging race and gender discrimination. The EEO conducted an investigation and transmitted the investigative file to Harter on July 7, 2016. On September 16, 2016, the Postal Service issued a Final Agency Decision on Plaintiff's claims finding no discrimination.

Harter filed this action in December 2016, alleging that the Postal Service's failure to rehire him constituted discrimination in federal employment in violation of Title VII of the Civil Rights Act and breach of contract. ECF No.

1 at 10. On August 29, 2017, Harter filed an amended complaint adding a prohibited practice claim under 5 U.S.C. § 2302(b)(2) and (b)(4). ECF No. 19 at 11. On November 8, 2018, the Court dismissed Harter's breach of contract claim, and on December 22, 2017, ECF No. 33, the parties agreed to dismiss Harter's prohibited practice claim, ECF No. 40. The Postal Service now moves for summary judgment on Harter's only remaining claim, his Title VII employment discrimination claim. ECF No. 59.

## LEGAL STANDARD

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)

(internal citation omitted). When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Sgt. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "In short, what is required to defeat summary judgment is simply evidence 'such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor.'" *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quoting *Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015)).

## DISCUSSION

### A. Evidentiary issues

The parties argue extensively about what evidence the Court should consider on this motion. First, Harter spends several pages of his response brief complaining that the Postal Service's motion for summary judgment relies on evidence not previously provided to him. There is no prohibition on relying on new evidence in a summary judgment motion as long as the nature of the evidence was properly disclosed under Rule 26, which it was in this case. Accordingly, the Court will consider the evidence submitted by the Postal Service in support of its motion.

Next, The Postal Service argues that the declaration of Don McGinn should be stricken because Harter did not disclose McGinn as an expert witness. The Postal Service also argues that Harter has not provided any foundation for McGinn's

personal knowledge or established the *Daubert* standard is met if he is an expert witness. McGinn was disclosed as a witness. His affidavit identifies and explains Harter's Postal Service employment documents and describes events that occurred during the EEO investigation, in which McGinn participated as a consultant for Harter. The relevant portions of McGinn's affidavit appear to be based on his personal knowledge, and will be considered.

Finally, the Postal Service objects to several declarations filed by Harter two weeks before the hearing on this motion and more than a month after Harter filed his response brief. These declarations were timely, and will be considered by the Court. Rule 6(c)(2) provides that "an opposing affidavit must be served at least 7 days before the hearing, unless the court permits service at another time." While the delay in filing the declarations at issue here seems unnecessary, Rule 6(c)(2) is categorical—the court must allow affidavits in response to a motion to be filed up to 7 days before the hearing.

**B. Harter's amended complaint alleges a discrimination claim regarding his 2014 employment.**

The Postal Service first argues that the amended complaint makes no allegation that Harter was fired from his 2014 job based on gender or race discrimination. The Postal Service notes that the complaint expressly challenges the EEO's "Final Agency Decision" and that decision does not address any claim of discrimination.

Harter alleges in his amended complaint that his termination was the result of discrimination. In particular, he alleges that his work performance was satisfactory, he had no discipline issues, and his supervisors and instructors were aware that he was Native American. ECF No. 19 at 3. And he directly ties his allegation of discriminatory treatment and request for damages to the Postal Service's "failing to inform him of his baseless termination." ECF No. 19 at 10.

### C. Harter exhausted his administrative remedies.

Prior to filing a Title VII discrimination claim in court, "an aggrieved person must facilitate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. 1614.105(a)(1); *Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009). However, this deadline is extended if the aggrieved person "did not know and reasonably should not have . . . known that the discriminatory matter or personnel action occurred." 29 C.F.R. 1614.105(a)(2).

The Postal Service argues that Harter failed to contact an EEO counselor within the required time because he did not contact the EEO until nearly a year after his 2014 employment ended and 56 days after he was not selected for temporary position #1. But Harter contacted the EEO within 45 days of learning he was not selected for position #2, and it was as a result of that contact that he learned of the

information he alleges supports his claims regarding his 2014 employment and position #1. In other words, Harter did not have reason to believe that a discriminatory personnel action occurred with respect to his 2014 employment or position #1 until he contacted the EEO regarding not being hired for position #2. Accordingly, Harter timely contacted an EEO counselor regarding all of his allegations.

**D. Harter fails to establish a prima facie case of gender or race discrimination.**

Title VII employment discrimination claims are analyzed under the *McDonnel Douglas* framework. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). Under this framework, Plaintiff has the burden of establishing a prima facie case of employment discrimination. *Id.* (citing *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir.2007)). If the plaintiff clears that hurdle, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Id.* (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123–24 (9th Cir.2000)). If the employer articulates a legitimate, non-discriminatory reason, the burden shifts again to the plaintiff "to raise a triable issue of material fact as to whether the defendant's proffered reasons for [the challenged actions] are mere pretext for unlawful discrimination." *Id.* at 1155–56 (citing *Noyes*, 488 F.3d at 1168).

To establish a prima facie case, a plaintiff "must offer evidence giving rise to an inference of unlawful discrimination." *Godwin v. Hunt Wesson*, 150 F.3d 1217, 1220 (9th Cir. 2003). A plaintiff can establish a prima facie case without direct evidence by showing that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situate individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004).

**1. Harter fails to establish a prima facie case of gender discrimination.**

The Postal Service argues that Harter fails to establish a prima facie case of gender discrimination. Harter does not respond to this argument in his briefing. On the record before the Court, Harter offers only the conclusory assertion that majority classes were treated differently and more favorably than Plaintiff during and following the 2014 season and statements from other employees that Chastain favored female employees. But Harter has not provided any evidence that he suffered an adverse employment action connected to gender discrimination.

With respect to Harter's claim regarding termination in 2014, the record contains statements from other employees that Chastain favored women, but no evidence that Harter was terminated based on gender discrimination. Indeed, all of

ORDER - 12

the temporary PSEs working at the Spokane facility over the 2014 holiday season were terminated around the same time Harter was terminated. There were no members of the opposite sex treated more favorably. With respect to hiring in 2015, there is similarly no evidence whatsoever of gender discrimination. The record demonstrates that the Postal Service hired a nearly equal number of men and women for position #1 and more men than women for position #2. There is no evidence that similarly situated individuals of the opposite sex were treated more favorably. And based on the evidence in the record, there are no other circumstances surrounding these employment actions that give rise to an inference of gender discrimination against Harter.

**2. Harter fails to establish a prima facie case of race discrimination.**

The Postal Service similarly argues that Harter has not established a prima facie claim of race discrimination. Harter has established that he was a member of a protected class (Native American/Native Alaskan) and there is at least a material question of fact regarding whether the hiring officials were aware of his race; he was qualified for the position; and he experienced adverse employment actions. But he has not produced any evidence that similarly situated individuals who were not Native American were treated more favorably. As with his gender discrimination claim, there is no evidence that similarly situated non-Native American temporary PSEs were treated more favorably with respect to termination after the 2014 holiday

season because all of those PSEs were terminated around the same time. With respect to the 2015 hiring decisions, there is no evidence in the record regarding the race or ethnicity of the individuals who were hired for position #1 and Position #2, so it is not possible to find that similarly situated non-Native American applicants were treated more favorably.

### 3. Harter fails to show that the Postal Service's articulated reasons for terminating him and not hiring him were pretext.

Even if Harter had established a prima facie case, with each the three adverse actions at issue, the Postal Service has articulated a legitimate non-discriminatory reason for the termination, and Harter fails to provide evidence that these reasons were pretext.

First, The Postal Service has plainly demonstrated that it regularly terminates employees after Christmas based on staffing needs, and that most of the PSEs at the Spokane facility were let go around this time, including nine on the same day Harter was terminated, and all by January 9, 2015. Harter has failed to present evidence demonstrating that he was actually terminated because of his gender or race. Moreover, based on the record before the Court, it is implausible that Harter would have continued to be employed as a temporary PSE absent gender or race discrimination given that all of the other PSEs were terminated around the same time.

With respect to Harter's application for positions in 2015, the selecting official for position #1, Michael Warren, stated that Harter was not hired for position #1 because he did not timely request an interview. This appears to have been an error in the Postal Service's hiring process, but it is nevertheless a non-discriminatory reason for not hiring him. And Harter does not provide any evidence plausibly supporting that he was actually not interviewed for position #1 because of gender or race discrimination.

The selecting official for position #2 states that he did not hire Harter because his prior on-the-job instructors reported that he was a mediocre employee. Harter has not demonstrated that this reason were pretext. Harter asserts that Chastain's performance evaluation, which contributed to Harter not being hired, was pretext for discriminatory animus. But there is no evidence to support that assertion. Harter offers statements by other Postal Service employees that Chastain appeared to favor female employees and that he displayed some hostility towards another male Native American employee, but there is no evidence whatsoever that Chastain displayed hostility towards or otherwise discriminated against Harter on the basis of gender or race. More importantly, Harter fails to refute the Postal Service's evidence that Chastain in fact perceived Harter to be a mediocre employee. Two on-the-job instructors, as well as Chastain, assert that Harter had performance issues and was only a mediocre employee. Harter offers only his own assertion that he did not have

performance issues and the statement Anne Lohman, who did not work directly with Harter, but saw him working every day during the 2014 holiday season and thought that he appeared to be a solid employee. Harter may well have been a very good employee, but he simply fails to provide any evidence of that or that Chastain was or should have been aware that Harter was a good employee.

## CONCLUSION

For the reasons discussed, **IT IS HEREBY ORDERED**:

**1.** Defendant's Motion for Summary Judgment, **ECF No. 59**, is **GRANTED**.

**2.** The Clerk's Office is directed to **ENTER JUDGMENT** consistent with this order in favor of Defendant on all claims and **CLOSE** this file.

**3.** All hearings and other deadlines are **STRICKEN.**

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 5th day of July 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge